# EXHIBIT A

# EXHIBIT A

Electronically Filed
02/26/2010 03:47:27 PM

*[signature]*

CLERK OF THE COURT

JAY KIM
10774 Reagan Street
Los Alamitos, CA 90720

## DISTRICT COURT

## CLARK COUNTY, NEVADA

JAY KIM

    Plaintiff,

V.

WELLS FARGO HOME MORTGAGE,
INC. ; and DOES  1 through 100,
inclusive,

    Defendants.

Real Party In Interest, Intervenor:

Jay-Semann: Kim

CASE NO. A-10-610833-C

XXII

COMPLAINT FOR DAMAGES

    Plaintiff JAY KIM complains against Defendants WELLS FARGO HOME

MORTGAGE, INC. ; and DOES  1 through 100, inclusive, and as grounds therefore

alleges:

**PRELIMINARY STATEMENT**   COMES NOW Jay-Semann: Kim, a non-attorney, real

man, and Real Party in Interest, a non-corporate entity, as agent for JAY KIM corporate

1

entity defined as a United States Vessel (hereinafter Plaintiff or Petitioner), appearing specially, not generally, by special rules, "Restricted Appearance," in the original, in the alternative, as a matter of right and privilege, to allege rights under the NEVADA Constitution, by verified oath and solemn affirmation of complaint, pursuant to special rules, exercising Petitioner's procedural due process.  Defendant's have been making false claims, contrary to the record, contrary to the statutes regarding real estate and foreclosures and have denied Petitioner's due process.

This **COMPLAINT FOR DAMAGES** seeks to SET ASIDE and VOID FORECLOSURE CLAIM, CANCEL NOTE AND MORTGAGE, CLAIM IN RECOUPMENT, AND QUIET TITLE, AGAINST ALL KNOWN DEFENDANTS AND FOR DECLARATORY AND INJUNCTIVE RELIEF; and notice is now given for the protection of Petitioner's person, property, estate, and trust, hereby enters his complaints of injured party, involuntary servitude and peonage, due to wanton and malicious acts and threats, duress, coercion and fraud, by and through promulgating counterfeit securities, in violation of the laws of the forum in NEVADA Republic, United States of America and the Law of Nations.

The Plaintiff wishes to point out to the Court that he is **NOT** an individual schooled in the law, but as an individual exercising his rights under law for the proper action of the Court from misrepresentative actions on the part of the Defendants.  As such, the Plaintiff asks the court to take **judicial notice** (**Rule 201** of the **Federal Rules of Evidence** and **NEVADA Rules of Evidence**) of the **enunciation of principles** stated in **King v. Knoll (No. 04-04149-JAR)**, **Whitney v. State of New Mexico (113**

**F.3d 1170)**, and **Haines v. Kerner (404 U.S. 519)**, wherein the courts are directed that those who are unschooled in law making complaints/pleadings shall have the court look to the **substance** of the complaint/pleadings **rather than** the form and hereby makes the following pleadings/notices in the above referenced matter **WITHOUT** waiver of any rights, claims or defenses.

The **Petitioner as Affiant herein**, without waiving **ANY** rights and while reserving **ALL** rights and legal issues states and avers as follows:

## JURISDICTION

1.  This Court has jurisdiction over this proceeding pursuant to State Statute and Under the NEVADA Rules of Civil Procedure .  This matter arises out of ownership and possession of real estate property located at 468 Green Macaw Way, Henderson, Nevada 89012.

2.   The Plaintiff 's property is located in NEVADA and defendants' are doing business in the City of Henderson in the State of NEVADA.

## STANDING

3.  Petitioner, as a secured party on a properly executed warranty deed is the one true owner fully vested with all rights to said property and therefore has standing to bring this complaint.

## VENUE

4.  Venue of this matter is proper in that the District Court for the State of Nevada for

3

COMPLAINT FOR DAMAGES

Clark County is the only court within the County that has the jurisdiction to hear this matter.

## PARTIES

5.  The Plaintiff in this action is named JAY KIM, whose property is located in NEVADA State. JAY KIM maintains a mailing address at 10774 Reagan Street, Los Alamitos,, California [90720]. JAY KIM is the successor in interest to this property

6.  Plaintiff is informed and believes and based thereon  alleges that defendant WELLS FARGO HOME MORTGAGE, INC.   hereinafter referred to as, BANK, is a unknown business entity , doing business within the County of Clark, State of Nevada, and as a consequence of their business of home financing has submitted itself to and is within the jurisdiction of this Court.   BANK is the lender under the Deed of Trust dated May 18, 2005, attached hereto as Exhibit "A"., Deed of Trust Excerpt pages 1- 3.  Plaintiff is informed and believes that BANK's CFO is Peter Wissinger and National Default Servicing Corporation as agent for BANK are responsible for the actions of BANK and are included in any reference to "Mortgage Defendants".

7.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES I through 100, inclusive, and therefore sues  these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

8.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of

4

COMPLAINT FOR DAMAGES

1  each of the remaining defendants and was at all times acting within the purpose and

2  scope of such agency and employment.

### **FACTS OF THE CASE**.

9. **Subject Property in Question**: the land referred to herein is situated in the state of

NEVADA, county of Clark, described as follows:

   a. **COMMONLY KNOWN AS**:  468 Green Macaw Way, Henderson, Nevada

   [89012 ]and Wells Fargo Loan Account number 0054237144  and TAX Parcel

   ID : 178-24-117-045

10. Regarding said Mortgage with BANK:

   a. On or about the 18th day May of 2005, JAY KIM, contracted with BANK for a

   loan of money in the amount of One Hundred Eighty-Nine Thousand Three

   Hundred Twelve Dollars and no/100ths ($189,312) US Dollars for the 1st loan.

   b. The Promissory Note does not specify the form funds may be paid as check

   bank, check, treasurers check or cashier's check drawn upon an agency

   instrumentality or entity.

   c. Plaintiff made regular monthly payments, in the form of Federal Reserve Notes

   on Account, thereafter..

   d. On or about  June 7, 2009, Jay-Semann:Kim tendered a private registered

   bonded promissory note to BANK  to discharge alleged debt on the subject

   property by notary presentment along with Pre-Offset Notice for Balance Book

5

COMPLAINT FOR DAMAGES

Adjustment, Statement of Account (Stamped Accepted for Value), IRS Form 1040V, and IRS Form 56.

e. On September 10, 2009, Jay-Semann: Kim sent Bank with Affidavit of Negative Averment, Opportunity to /cure and Counterclaim which was acknowledged received on or about September 14, 2009 by registered return receipt. However, BANK did not respond.

f. On or about October 8, 2009, BANK was sent a first Notice of Fault and Demand for Payment in the amount of $6,143,400,000 US dollars which was received on or about October 19, 2009, per USPS 3811 return receipt. BANK did not respond.

g. On or about September 28, 2009, Plaintiff received a Notice of Default and Election to Sell Under Deed of Trust from BANK c/o its agent National Default Servicing Corporation who failed/declined to acknowledge that the purported note is by its/their admission, void due to fraud in the factum. BANK failed/declined to bring forward the (now void) note to prove its authority to foreclose. NOTICE OF DEFAULT AND ELECTION TO SELL mentions National Default Servicing Corporation as agent for the current beneficiary. This Notice of Default states that the present BENEFICIARY has deposited with said agent, such DEED OF TRUST and all DOCUMENTS EVIDENCING OBLIGATIONS SECURED THEREBY including ONE NOTE FOR THE ORIGINAL sum of $189, 312.00. This Notice is signed National Default

6

COMPLAINT FOR DAMAGES

Servicing Corporation as agent for the current beneficiary by Wells Fargo Bank as Attorney in Fact.    By this Notice, said agent acknowledges that it is in possession of the DEED OF TRUST and the NOTE. Officers of National Default Servicing Corp. as Agent failed/declined to acknowledge that the purported note is by admission of BANK being void due to fraud in the factum. Therefore the NOTICE OF DEFAULT AND ELECTION TO SELL is void for fraud and a counterfeit security.

h. On or about October 30, 2009, BANK was sent a second Notice of Fault and Demand for Payment which was received by RS on or about November 16, 2009, per USPS 7009 0080 0000 7144 5881 return receipt.  BANK did not respond.

i. On or about December 11, 2009, BANK was sent a Final Notice of Fault and Demand for Payment which was received on or about December 14, 2009, per USPS 3811 return receipt.  BANK did not respond.  Bank was in default and damages were past due.  Penalties and interest accrued daily as provided by contract.

j. On or about December 26, 2009, a Notice of Final Determination and Judgment in Nihil Decit issued.  The Judgment acknowledged that BANK had not replied to the notices of fault and demand for payment and inquiry and therefore, "silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading".

COMPLAINT FOR DAMAGES

US v TWEEL.

k. On or about December 1, 2009 Affidavit of Surety Form 28, Release of Lien on Real Property, Form 90, and Release of Personal Property From Escrow For 91[GSA 28, 90 and 91] were sent to BANK, however BANK did not response.

l. On or about December 28, BANK was sent a demand notice to Cease and Desist Collection Activities prior to validation of alleged debt. BANK made no response.

m.     On or about January 2, 2010, BANK was sent a notary presentment which included Demand Genuine Adjustable Rate Note and Title Pages of the mortgage, Notice of Interest, Notice of Rescission of signature, Revocation of Power of Attorney, and Substitution of Trustee/Beneficiary. These documents were filed on UCC 1 recorded on February 26, 2010.

n. On or about February 22, 2010 UCC 3 Financing Statement Amendment was filed with respective document including Registered Bonded Promissory Note #JSKBPN003 $1,000,000,000. as full payoff plus coverage for additional fees and costs accrued for the BANK Mortgage account number 0054237144 sent to Wells Fargo Bank , c/o CFO Howard Atkins.

o. On or about February 2, 2010 Peter Wissinger, CFO for BANK was sent a notary presentment including Notice to Cease and Desist and Rescission of Signatures specifying a lack of power of foreclosure sale.

p. The Notice of Trustee's Sale dated February 9, 2010, now scheduled a trustee

8

COMPLAINT FOR DAMAGES

sale for March 2, 2010 at 10:00 a.m. using National Default Servicing Corporation as trustee for successor trustee, or substituted trustee.for estimated unpaid balance and costs set at $177,237.12.

11. Pertinent correspondence exchanges show:

a. BANK has been noticed of its failure of consideration; failure to make full disclosure (BANK did not disclose the use of said Note and Deed of Trust as substance for negotiable Instruments; a violation of UCC 3-407, "material alteration to the original contract") and fraud by BANK ; and failed to present a full accounting and proof of consideration by presenting the original (wet ink) Note.

b. BANK failed to respond, and therefore agreed to the rescission of the signatures JAY KIM from the DEED OF TRUST/ MORTGAGE/NOTE/ INSTRUMENT/ TRANSACTION for failure of consideration and Misrepresentation and Fraud, since said NOTE and DEED OF TRUST become by substance negotiable INSTRUMENTS in violation of the Doctrine of Unconscionability, and since BANK is not the real Party in Interest, and is not the holder in Due Course of the NOTE.

c. On or about February 2, 2010 Certified Mail No. 7009 1410 0000 9334 7204, 7009 1410 0000 9334 7273 sent to both WELLS FARGO/ National Default Servicing Corp giving notice of the notary presentment, and copy of affidavit Rescission of signatures and Title 15 Notice to Cease and Desist since it was

obvious BANK was not keeping its agent  up on the current status of my file. The trustee sale is still scheduled despite BANK's non-response to requests of information from lender, along with payment history not noting that in fact they had no position as their Power of Attorney had been revoked and they and BANK had been discharged as Trustee, Substitute Trustee, Agent or Servicer as per the Notice put into Public Record.

d. While Plaintiff's dispute is being reviewed, the foreclosure sale is still set.  No other correspondence acknowledging OR disputing my facts in documents presented to both parties was received prior to the present date.

e. Up, and until this time, there is not valid Substitute Trustee filing even though BANK had filed and recorded and presented to me the NOTICE OF DEFAULT. So, National Default Servicing Corporation is merely and agent of BANK.  They are not even the Substitute Trustee of Record to date. .

f. In fact, the February 25, 2010 Notary Presentment and recorded UCC filing give notice of Rescission of signatures, Revocation of Power of Attorney, and Substitution of Trustee/Beneficiary.

g. Under UCC 3 – 603 payment tendered and refused is payment made to the extent of the face amount of the instrument this includes the present case , NOTICE OF COUNTERFEIT SECURITY on the NOTICE OF TRUSTEE'S SALE

## SUMMARY OF THE CASE

10

COMPLAINT FOR DAMAGES

12. The main part of the case involves Petitioner who has owned the property in question for approximately 6 years and is the record owner of the property by deed. But never received any consideration. Plaintiff alleges that the Defendants knowingly participated in fraud, racketeering, and other crimes in a scheme to unlawfully take away Plaintiff's property.

## BACKGROUND FACTS

13. It is Plaintiff's contention that the United States is and has been in a bankruptcy since at least 1933 and evidence of such can be found in the Congressional Record and United States Code. As part of the "New Deal" the United Stated borrowed 33 million non-redeemable Federal Reserve Notes from the Federal Reserve and at that time a new form of currency entered into circulation in the system of commerce.

14. As a result today, as contained in numerous case decisions, a debt can no longer be paid but merely discharged as a matter of law. Meaning, Federal Reserve Notes have no intrinsic value, and as such, are negotiable instruments under the negotiable instruments law and when used to, in the common vernacular, "pay" a debt it is like paying a $2 debt owed with a $2 I.O.U. The net result is that one ends up with $4 dollars of debt and therefore, as you can see in this example, the debt is not paid but merely discharged as a matter of law. The original debt still exists but the nature of the debt changes and is no longer collectible.

15. As a matter of practice and usage the only functional currency in circulation and use today is non-redeemable Federal Reserve Notes. When Petitioner applied for the

COMPLAINT FOR DAMAGES

loan and was funded on the loan, he understood and believed he was being loaned "money", meaning money of exchange that was redeemable and had intrinsic value; when in reality he was purchasing credit from the Federal Reserve, through the lender, in the form of Negotiable Instruments, or specifically, Federal Reserve Notes.

16. As a result there were numerous material misrepresentations in the contract for the lending of credit, which constitute fraudulent inducement and which lead to fraud in fact in the operation of the contract. It was never disclosed to the Petitioner that the Mortgage Company, when it loaned "money" according to Federal Reserve Publication Circular 10 under the "Master Account Agreement" as executed with the Federal Reserve (the ultimate source of all credit issued today in the US system), put up no more than 8% of the total funds that were proffered.

17. This raises several questions the Petitioner is asking the Court to answer. Under such an arrangement where the purported lender of the alleged Mortgage, after receiving months of payments, plus a legal and negotiable Promissory Note for $189,312 (One Hundred Eighty-Nine Three Thousand Twelve Dollars; plus a legal and negotiable Bonded Promissory Note for one million for FULL PAYMENT and Settlement, have received back substantially more than what said purported lender originally contributed; so how are they an injured party? If they have received more back than they put in and are in fact not damaged, do they have standing to foreclose or come to this Court or any other to get remedy? If they have been charging interest on the entire balance, on the life of the loan, and have only put in a small percentage (1/13th) of the overall loan, does that constitute usury in violation

12

COMPLAINT FOR DAMAGES

of NEVADA law prohibiting usury? If the bulk of the proceeds have come from someone other than the purported lender, does the purported lender have standing and/or authority to foreclose or seek remedy in this or any other NEVADA court; and if they are entitled to seek remedy, is it for the full amount of the mortgage or just a percentage equivalent to what percentage they have invested?

18. Ancillary points to this issue are: does the purported lender have the statutory authority under NEVADA law to foreclose on this particular property? Does the purported lender have possession of the note with a duly executed assignment and evidence of the full amount of consideration provided to demonstrate they are in fact a legitimate Holder in Due Course?

19. The presumption is that every party that comes to this Court, or any other Article tribunal, is a "corporate entity" (creature of the state), engaged in commerce or commercial activity in this closed Federal Reserve System monopoly, unless the presumption is rebutted. This presumption is hereby rebutted for the Plaintiff, and Rule of Necessity is invoked.

20. Ultimately there must be a remedy to the credit based, fractional reserve, fiat currency, monetary system. It would be a fraud upon the people if they were provided no remedy to pay a debt at law, but were merely allowed to discharge it (replace it with new debt). The creator's of this fractional reserves banking system understood the issues, and have provided remedy in the statutes. These remedies are provided under Federal Statute 46 USC 748 for payment of judgments and

claims against United States Vessels, (which includes the legal fiction JAY KIM , by the United States Secretary of the Treasury and Federal Statute 50 app USC 7, 9 & 32, for the return of property seized, to be returned by the United States Attorney General as the Alien Property Custodian under the Trading with the Enemy Act under Title 50 app.

## FIRST CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

## <u>TO SET ASIDE FRAUDULENT FORECLOSURE CLAIM</u>

## AS AGAINST ALL MORTGAGE DEFENDANTS

21. Plaintiff hereby incorporates the allegations of all previous paragraphs  as though those allegations were fully set forth herein.

22. Mortgage Defendants do not have a valid contract with Petitioner wherein any Mortgage Defendant is a beneficiary and therefore have no right of Claim and cannot benefit from any foreclosure of this property.

23. Mortgage Defendants convinced this Petitioner to enter into any alleged mortgage contracts by means of fraudulent inducement, fraud in fact, and material misrepresentation.

24. Mortgage Defendants are not nor ever were the "Holder in Due Course" of any financial instrument that requires Petitioner to pay or perform upon which Mortgage Defendants could exercise any claim.

14

COMPLAINT FOR DAMAGES

25. The Honorable JUDGE CHRISTOPHER A. BOYKO of UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION, recently ruled in Case 1:07-cv-02282-CAB regarding 14 separate motions for foreclosure "In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promise as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest". "The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee, trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint."

26. JUDGE KATHLEEN M. O'MALLEY, UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION, IN RE FORECLOSURE ACTIONS, states: "Fifth Amended General Order No. 2006-16 (October 10, 2007). A foreclosure plaintiff, therefore, especially one who is not identified on the note and/or mortgage at issue, must attach to its complaint documentation demonstrating that it is the owner and holder of the note and mortgage upon which suit was filed. In other

COMPLAINT FOR DAMAGES

words, a foreclosure plaintiff must provide documentation that it is the owner and holder of the note and mortgage as of the date the foreclosure action is filed."

27. Anything short of the full disclosure of all known pertinent facts is a fraud upon the court and renders void any decree thereafter entered. Coppinger v. Coppinger, 130 Colo. 175, 274 P.2d 328 (1954); Weber v. Williams, 137 Colo. 269, 324 P.2d 365 (1958)

28. To simply go through the form of legalism without a fair disclosure of existing known facts is of no avail. Coppinger v. Coppinger, 130 Colo. 175, 274 P.2d 328 (1954); Weber v. Williams, 137 Colo. 269, 324 P.2d 365 (1958).

## **FAILURE OF CONSIDERATION**

29. The alleged Lenders, Mortgage Defendants did fail to lend any valuable consideration. Mortgage Defendants provided no more than a promise to pay the substance of value, which is known as Legal Tender, by issuing a promise to pay said Legal tender through the issuance of Negotiable Instruments. Any Legal Tender that Mortgage Defendants did actually part with, in exchange for any Negotiable Instruments as were later presented to them, was a secondary and unrelated transaction.

30. Mortgage Defendants did not pay the value, as agreed to in the Note, to the parties that they agreed to lend the money to. What Mortgage Defendants provided to the alleged borrower was a promise to pay value in the form of Negotiable Instruments. These Negotiable Instruments in and of themselves contained no value but were

merely promised to pay all value at a later date. As no value was parted with at the formation and completion of the loan agreement and alleged contract. Any alleged contract evidenced by such a Promissory Note is inherently invalid.

## CLAIM FOR USURY

31. If the Promissory Note can be held to lawfully require a repayment in Legal Tender, then any good faith estimate accounting for that actual amount of Legal Tender Federal Reserve Notes that were actually parted with, will reveal that Mortgage Defendants actually gained a Usurious amount of interest in violation of TILA 15 USC 1601. Through the use of their fractional reserve banking system, Mortgage Defendants probably parted with a sum of Legal Tender Federal Reserve Notes amounting to less than 1/8th of the face value of the Negotiable Instruments that they issued to encumber the property in question. This means that the actual interest rate upon the accurate amount of Legal Tender Federal Reserve Notes as were allegedly loaned was a minimum of 8 times greater than the amount agreed to in the original MORTGAGE Contract. This is a violation of Common Law and Statutory prohibitions against usury throughout the vast majority of the laws of this nation. As a result of this Usury, the obligation's true, smaller but hidden principal has been paid off, and all economic interest on the true principal that Mortgage Defendants had in the property in question has also been repaid. As a result the interest that Mortgage Defendants continue to claim through any such alleged Mortgage Note is no longer lawfully existent.

COMPLAINT FOR DAMAGES

32. Attempted Collection of an Unlawful Debt in Violation of Principles of Law enshrined within 18 USC 1961, 1962, and 1964: Mortgage Defendants have received income from collection of the un-lawful debt encumbering this Plaintiff's property. Mortgage Defendants have participated in and/or used the proceeds of such income in the operation of an enterprise which engages in activities which affect interstate and foreign commerce in violation of the principles of Common-Law enshrined within 18 U.S.C. 1961, 1962, and 1964.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

### As against Mortgage Defendants

33. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

34. **BREACH OF CONTRACT, FIRST COUNT**: Mortgage Defendants contracted with this Plaintiff to loan Plaintiff Legal Tender "Dollars" of U.S. currency. The contracting parties contracted that the loan would be repaid in Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay in Negotiable Instruments. Mortgage Defendants failed to lend this Plaintiff Legal Tender "Dollars" as lawfully defined by the US Congress in the form of US Silver Coin.

35. The U.S. Congress, in deciding what was to be Legal Tender for this country, by act on April 2nd, of 1792, defined the term "Dollar" to mean specifically a coin issued by

the U.S. Government containing 371 4/16 grains of pure silver. There is no lawful authority for referring to any form of paper currency as Legal Tender "Dollars". As Mortgage Defendants have failed to lend Legal Tender within the Lawful definition of the term, the contractual agreement between these parties was breached by Mortgage Defendants  Therefore any Promissory Note is lawfully invalid.

36. **BREACH OF CONTRACT, SECOND COUNT**. By common acceptance, and the Federal Reserve Corporation's own decree, Federal Reserve Notes and other US Currency have come to be known as Legal Tender "Dollars". Mortgage Defendants entered into a contract to lend Legal Tender "Dollars" to this Plaintiff. The contracting parties entered into a contract to loan or borrow and repay Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay Negotiable Instruments.

37. Mortgage Defendants did not loan any Legal Tender "Dollars" to this Plaintiff, as the term "Dollars" has commonly come to be known and used. As a result, Mortgage Defendants have not loaned the "Dollars" intended and specified in the contract as defined by common definition. As a result, the terms of the contractual agreement between these parties was breached by Mortgage Defendants

## **CLAIM FOR ULTRA VIRES**

38. Mortgage Defendants each exceeded the express provisions of its Corporate Charter in that it engaged in the activity of loaning a substance other than Legal Tender "Dollars" of the United States. The Negotiable Instruments which it issued in

19

COMPLAINT FOR DAMAGES

granting the loan here in question are not Legal Tender "Dollars" of the United States. Mortgage Defendants are authorized by their respective charters to loan Legal Tender "Dollars" of the United States only. There is no authority in existence which authorizes Mortgage Defendants to loan the Negotiable Instruments as was done in this case.

## CLAIM FOR INDEFINITENESS OF CONTRACT

39. As a result of the failure of Mortgage Defendants to specify the essential term of whether they would loan in Legal Tender "Dollars" or Negotiable Instruments and whether they would demand payment in Legal Tender "Dollars" or Negotiable Instruments, Mortgage Defendants created a contract which was indefinite to the point that a Court of Law will not be able to determine which type of funds was either agreed to be loaned or to be repaid. As a result the Mortgage Note contracts in question are indefinite within the term as defined by law.

## CLAIM FOR UNCONSCIONABILITY

40. As a result of the Fractional Reserve banking practices and the loan of Negotiable Instruments by Mortgage Defendants and the officers of the Bank, the actual amount of Federal Reserve Notes commonly considered "Legal Tender" that were parted with was only 1/8th or 12% of the amount agreed to in the original Loan Agreement and MORTGAGE Contract. This is a violation of State and Federal as well as U.C.C. section 2-302, and other provisions against Unconscionable Actions.

41. Further, the parties to the contract occupied substantially unequal bargaining

20

COMPLAINT FOR DAMAGES

positions in that Mortgage Defendants had access to the ability to circulate Negotiable Instruments as money within the community and state. By this activity Mortgage Defendants have the ability to circulate, as money, the Negotiable Instruments which they issue. This gives Mortgage Defendants the ability to circulate between 8 and 33 times the amount of money in comparison to the amount that this Plaintiff is capable of circulating. As the Negotiable Instruments of this Plaintiff are not accepted for circulation as money, he is in a substantially unequal bargaining position, and he was thus unfairly influenced to enter into the contract.

42. By the terms of said written agreement, the Plaintiff is entitled to rcover reasonable fees and costs.  By reason of the aforementioned breach of the defendants the plaintiff has been forced to incur costs, fees and damages to prosecute this lawsuit incurring costs, fees and legal services.

### THIRD CAUSE OF ACTION

### FOR FRAUD

### As against Mortgage Defendants

43. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

44. The failure of Mortgage Defendants to specify the essential terms of whether they would loan in Legal Tender "Dollars" or Negotiable Instruments or demand payment in Legal Tender "Dollars" or Negotiable Instruments allowed Mortgage Defendants to take advantage of and defraud this Plaintiff.

COMPLAINT FOR DAMAGES

45. The NEVADA Public Act entitled BANK ACT OF NEVADA of 1919, specifically prohibits banking institutions such as Mortgage Defendants from circulating their commercial paper in purposeful efforts to create debts such as the one encumbering this Plaintiff's property. As such, the Notes and Mortgages encumbering this Plaintiffs property are invalid.

46. Plaintiff states that Defendant BANK'S  actions of fraud and deceit have foundation in Taylor v. State Compensation Insurance Fund, 175 Mont. 432, 913 P.2d 1242 (1996) where in order to sustain a claim of fraud, claimant was required to plead and prove each of the nine elements of fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation; (5) the speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury caused by reliance on the representation.

47. Petitioner contends that all of the above elements exist and believes and having knowledge and thereon alleges that on the date of the execution of the Promissory Note, and accompanying MORTGAGE document, the relevant information contained therein was false and materially deceptive, and unfair business trade practices were used to conceal the true nature of the transaction

(1) A representation:

Mortgage Defendants represented that they were going to fund the loan.

(2) Falsity of the representation:

Mortgage Defendants did not in fact loan money to Petitioner.

(3) Materiality of the representation:

Mortgage Defendants misrepresentations were material because the facts are

that under the current monetary system of the USA, the lender loans no money

to the borrower as alleged in the loan application or loan documents.

(4) Speaker's knowledge of the falsity of the representation:

The lender falsely stated the lender was loaning money prior to closing, and

the title / escrow person who received the check(s) are able to see that the

"lender" does not transfer funds into the escrow account and that the source of

the funds is from elsewhere but falsely represented that funds did come from

the "lender".

(5) The speaker's intent it should be relied upon:

Mortgage Defendants words were relied upon by Petitioner in good faith.

Consequently Petitioner was then defrauded during the process of funding and

closing the alleged loans.

(6) The hearer's ignorance of the falsity of the representation:

Petitioner was not privy to the source of funds and was not in an equal or

similarly situated business posture as Mortgage Defendants at the time of the

COMPLAINT FOR DAMAGES

Contract formation period, and was taken advantage of by the unfair business practices brought on by Mortgage Defendants.

(7) The hearer's reliance on the representation:

The words and writings of Mortgage Defendants were relied upon to the detriment of the Petitioner as Petitioner was fraudulently induced to pay money of exchange (currency exchanged for a substantial portion of Petitioner's commercial energy) for money of account (Credit on Account as was created by Defendant(s), out of nothing).

(8) The hearer's right to rely on the representation:

Petitioner relied upon Mortgage Defendants' offer and was given a good faith estimate, assurances, written agreement, and words that Petitioner had a right to rely on, and because Petitioner did rely upon the acts, deeds and inducement by Mortgage Defendants who had superior knowledge, and because it is an industry standard operation, Petitioner relied upon these representations as were made about the so called "loan".

(9) The hearer's consequent and proximate injury caused by reliance on the representation:

Petitioner's reliance upon fraud in statements and writings provided to him by parties in superior position precluded Petitioner from appreciating the essential elements of the undertaking. Petitioner's reliance gave forth to consequent and proximate injuries for:

24

COMPLAINT FOR DAMAGES

a) Loss by conversion under contract

b) Financial instability of the home unit due to usury.

c) Interfering with financial stability.

d) Loss of use and enjoyment of funds which were paid in unfair advantage to Mortgage Defendants.

### FOURTH CAUSE OF ACTION

### FOR CANCELLATION

### Return Promissory Note for Cancellation

48. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

49. Plaintiffs are informed and believe based on allegations made throughout these pleadings, that no Defendant or other party has ever possessed a legitimate security in the subject property that would otherwise have enabled them to collect payments allegedly due under the Note and/or Trust Deed or that would have otherwise enabled them to foreclose upon and attempt the sale of Plaintiffs' residential home.

50. Defendants wrote and executed on a loan knowing that it was not in federal compliance.  No notice was ever given to plaintiff regarding the status of said loan. Plaintiffs discovered the fraud and the situation they were in and followed legal advice to file a complaint against the defendants due to their illegal acts and actions complained of herein.

51. Defendant claims an interest or estate in Plaintiff's above described property disputing or denying Plaintiff's right to ownership and by contending that ownership is or will rest in them by means of a foreclosure in violation of her equitable superior title.

52. The Notice of Trustee's Sale, preceded by the Notice of Default and each of these documents, were the product of multiple violations and statutes in predatory lending practices.

53. All such documents that rise from multiple violations of law are void and unenforceable, and as a consequence of unlawful acts of defendants, their predecessors, assigns, and agents are void and must be cancelled to quiet title in the plaintiff.

   a.   Plaintiffs further believe that the Note was a mere contract, as opposed to a negotiable instrument, that is unenforceable due to failed consideration on the part of Mortgageit.  If the Note is unenforceable, then the corresponding Trust Deed must also fail, leaving Defendants, their agents, employees and assigns outside the chain of title to Plaintiffs home.

   b.  In the alternative, Plaintiff is informed and believes that no valid assignment of the Trust Deed was made from the original lender  or to any third party(s) – now an incurable defect.  As a result, the Note (even if it were enforceable) became and remains unsecured by the Trust Deed.  Plaintiff did not know the underlying misrepresentations of fraud that make such instruments void until recent disclosures

COMPLAINT FOR DAMAGES

shed light on their loan transactions.  Plaintiff made inquiries concerning explanation of their loan transactions but they were ignored.

     c. Despite the lack of legitimate interest in plaintiffs home, these defendants and their agents, published and/or recorded either themselves or through third parties, default related notices including substitution of trustee notices.  These notices, the corresponding non-judicial foreclosure initiated by Defendants, and the threatened sale of the plaintiffs residential home property resulted in substantial harm to plaintiff, along with the loss of reputation, good credit, good title and well being.  Plaintiff has a reasonable apprehension that if left outstanding such instruments may cause serious injury to plaintiffs and require plaintiff to pay it or defend a lawsuit based on it, and by refusing to pay alleged debts, plaintiff may be damaged in his credit.

54. Plaintiff therefore asks for punitive damages against the defendants and each of them as Defendants have no right of title or estate in said property in that foreclosure sale proposed will be fraudulent or otherwise illegal and transfer no right to Defendant, its predecessors, successor, or agents.  Plaintiff requests that each published or recorded instrument relative to the subject loan with BANK, including the Trust Deed and the attempted assignment of same, be adjudged void and thereby cancelled

55. Petitioner requests that the original NOTE be brought to Court for inspection and review for the purpose of authentication under rules of evidence, and for canceling due to Fraud in Fact.

Cancellation of an instrument may be had in an action for restitution [*see, e.g., Millar v. James (1967) 254 Cal. App. 2d 530, 532, 534, 62 Cal. Rptr. 335* (affirming judgment for restitution of real property conveyed in consequence of fraudulent inducement, and for cancellation of Petitioner's deed to defendant)]. A Petitioner seeking restitution on the basis of his unilateral rescission of a contract is entitled to complete relief [*see* Civ. Code § 1692[Dearing's]].

## FIFTH CAUSE OF ACTION

### FOR QUIET TITLE

### AS AGAINST ALL PARTIES

56. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

57. Plaintiffs' claim of interest in the subject real property is adverse to defendants claim of interest.

    a.  Plaintiffs are informed and believe and thereupon allege that defendants claims an interest in the subject real property is adverse to plaintiff herein disputing or denying Plaintiffs' right to ownership and by contending that ownership is or will rest in them by means of a trustee's sale. However, the defendants' claim of interest is without any right whatsoever, and said Defendants have no equitable right, claim, or interest in said property.

COMPLAINT FOR DAMAGES

Plaintiff has sent or has caused to be sent notice of that the defective transaction is void and the misrepresentations and fraud make the transaction void from its inception. Their intent to void or rescind the subject loan transaction but has only sent those notices to the only entities that have been disclosed. Hence, without this action, neither the rescission nor the voiding of the transaction or reconveyance which the Plaintiff is entitled to file (as attorney in fact for the originating lender) gives Plaintiff full and clear title to the property.

    b.   The real party in interest on the lender side may be the owner of the asset backed security issued by the SPV, the insurer through some claim of equitable interest, or the Federal government through the United States Department of the Treasury or the Federal Reserve. The security is a "securitized" bond deriving its value from the underlying mortgages of which the subject mortgage is one. Thus Plaintiff is entitled to quiet title against Defendants, clearing title of the purported subject mortgage encumbrance.

58. Plaintiff seeks a declaration to quiet title, that the title to the subject property is vested in plaintiffs alone and that the defendants, and each of them, be declared to have no estate, right, title or interest in the subject property, and that said defendants be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff

## SIXTH CAUSE OF ACTION

COMPLAINT FOR DAMAGES

## FOR CONSTRUCTIVE TRUST

## [CAUSE OF ACTION FOLLOWING TRUST PROPERTY INTO ITS PRODUCT AGAINST MORTGAGE PARTIES]

### AS AGAINST ALL PARTIES

59. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

60. Where the trustee, by the wrongful disposition of trust property, acquires other Property, the beneficiary is entitled, at his option, to either enforce a constructive trust of the property so acquired, or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, misfeasance, malfeasance and or nonfeasance, as long as the product of the trust Property is held by the trustee and can be traced.

61. As a proximate result of the defendant BANK's fraudulent misrepresentations and otherwise fraudulent conduct as alleged herein, Plaintiff is threatened with loss of his residential property as well as proceeds thereof.

62. By reason of the fraudulent and otherwise wrongful manner in which BANK , or any of its agents, obtained their alleged right, claim or interest in and to the subject property, BANK and each of its agents have no legal or equitable right , claim or interest therein, but instead, BANK and each of its agents are involuntary trustees holding said property and profits therefrom in constructive trust for plaintiff with the duty to convey the same to plaintiff forthwith.

63. Except as stated above, the claim of the Petitioner against the Trustee(s), any and all applicable, and for breach of trust, is that of a general claim with more specific claims possible once discovery is completed and a right to amend is reserved.

## FOR SEVENTH CAUSE OF ACTION

### CAUSE OF ACTION CIVIL RICO

### ILLEGALITY BY MONOPOLY, CONSPIRACY, & RACKETEERING:

### AGAINST TRUSTEE AND MORTGAGE DEFENDANTS

64. Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

65. Mortgage Defendants and their officers, and other Banking, Financial, Political, and/or Real Estate Institutions, (unknown at this time) have all knowingly, or unknowingly, conspired against the working class population of the good PEOPLE OF THE County of Clark and State of NEVADA to submerge the common people in a mountain of perpetual and unpayable debt. The Federal Reserve Banking Corporation of which Mortgage Defendants are each a franchise agent, has demonstrated an historical and documentable track record of purposefully expanding and contracting the money supply at timed intervals so as to purposefully dispossess economically vulnerable NEVADA property owners and Americans from their property. This Plaintiff and all of the good people of Clark County, the State of Nevada, and the United States are the pointed targets of a conspiracy by Mortgage Defendants and other banking corporations, to reduce the people of America to a

31

COMPLAINT FOR DAMAGES

class of obedient and broken slaves in a society with substantially less constitutional rights and in a mirror image likeness to that of Nazi Germany or the previous Soviet Union.

66. Mortgage Defendants and their officers are active causes of and participants in the present increase in the foreclosure rate in this state. This Plaintiff does not know whether the individual officers are knowledgeable or not of their criminality, but they have caused detriment and damage to this Plaintiff, and every homeowner in this state by the manner in which they entered into this, and the majority of their other lending contracts.

67. Petitioner claims that Mortgage Defendants operate in a pattern, practice and course of conduct which constitutes a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where the unaware public unknowingly enters into contracts under fraudulent terms wherein they are systematically loaned credit when they were led to believe that they were being loaned real money, and are thereby placed into peonage and usury due to a lack of consideration by the mortgage company

68. Petitioner claims that Mortgage Defendants operate in a pattern, practice and course of conduct which constitutes a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where:

COMPLAINT FOR DAMAGES

in order for the public to close on a loan, they are deceived, by a person who is in a superior position, into gifting their property away under the conveyance and security instruments including a MORTGAGE, the nature of which was not fully disclosed, which in turn precluded this Petitioner from appreciating the essential elements of the undertaking.

69. Plaintiff claims that Mortgage Defendants operate in a pattern, practice and course of conduct which constitutes a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice wherein said Defendants systematically engage in a foreclosure process and deprive the public of property, upon a fraudulent process founded upon fraudulent documents.

70. Petitioner claims that Mortgage Defendants operate in a pattern, practice and course of conduct which constitutes a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where this systematic usury and deprivation are the cause of consequent and proximate injuries under the Civil RICO Statutes.

## **ALLEGATIONS OF CRIMINAL WRONGDOING** .

71. Defendants knew or should have known that they fraudulently made a false oath or account, a violation of State and Federal Law.

COMPLAINT FOR DAMAGES

72. Defendants knew or should have known that they fraudulently presented or used a false claim, a violation of Federal and State law.

73. Defendants knew or should have known that they fraudulently caused a False Security Instrument or Counterfeit Security to be created.

74. Defendants are engaging in a pattern and practice of conduct that constitutes a criminal enterprise in violation of State and Federal RICO statutes.

## CAUSE OF ACTION INVOLVING FEDERAL OFFICIALS

75. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 72 as though fully set forth herein.

76. If any Defendant can uphold any valid claim upon Petitioner or Petitioner's property, it can be fully discharged and the property returned by making proper claim under Federal Statute 46 USC 748 wherein the Secretary of the Treasury for the United States is authorized to pay claims and judgments and for the return of property under Federal Statute 50 App USC 7, 9 & 32 wherein the Attorney General for the United States is authorized to return property. These are the statutory remedies, as the people's remedy, for claims and seizures under the fractional reserve fiat monetary system.

77.

## FOR EIGHTH CAUSE OF ACTION

## FOR TRESPASS

## AGAINST TRUSTEE AND MORTGAGE DEFENDANTS

78.   Plaintiff hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

79.   On or about January 2010, plaintiff was in possession of certain real property which is the subject real property in Henderson, Nevada that he was using at all times herein.

80.   At time unknown, defendants, without the consent or authority and against the will of the plaintiff, entered onto the plaintiff's real property and broke the front door lock and made forcible entry on property and, left the window blinds and light on and other signs of their trespass on the property.

81.   The effect of conduct that has produced irreparable damage to plaintiff, to prevent plaintiff's freedom to ingress to and egress from the property freely without fear of unknown intruders entering his property without any right or authority to do so, and without plaintiff's consent. Plaintiff made police report of the unauthorized entry and demanded further that defendants refrain from any further entry on the property.

82.   Plaintiff fears further and continuing acts of damaging conduct by defendants will continue to trespass, and therefore continue to deprive plaintiff of plaintiff's right to exclusive possession of the property. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that unless restrained by this court, defendants will continue to trespass against plaintiff's property. Such trespassory conduct by defendants will result in irreparable harm to plaintiff, in

35

COMPLAINT FOR DAMAGES

that it will create emotional distress and unknown damages to the land, thereby posing a threat to plaintiff's good and marketable title to the property. The potential damages that could proximately result from defendants' continued trespass would be extremely difficult, if not impossible, to assess accurate.

83. As a result of defendants' conduct, as alleged in this complaint, plaintiff has been deprived of the use of the property, emotional distress and plaintiff's property damage in a sum to be determined at trial.

84. Wherefore, plaintiff requests  Defendant be enjoined during the pendency of this action, and permanently thereafter, from such trespassory conduct to be enjoined with sufficient specificity forinjunction to issue

///

///

///

///

///

///

///

## **RELIEF REQUESTED**

WHEREFORE, Petitioner requests the following relief from this Court as judgment

36

COMPLAINT FOR DAMAGES

against defendant BANK and each of its agents

1.      Require the Defendants to answer this complaint, admitting and denying with particularity each and every allegation herein or suffer the ramifications of a default for failure to answer and an injunction be ordered preventing any Defendant from moving against the property, contacting any occupants, transferring any property or in any way adversely effecting Plaintiff's interest in the property in any manner. That any so-called foreclosure claim which could result in the transfer of property from Petitioner to Defendants be deemed null and void.

2.   That this Court issue an Order Quieting Title in favor of this Petitioner and/or declaring the MORTGAGE and Note Contracts on the property involved herein be declared Null and Void.

3.   That all issues be tried by a Jury herein, actually be tried before and by a full Jury as at Common-Law within the Nisi-Prius Civil Jurisdiction, with the verdict to be binding upon this Court and all parties as Constitutionally Required by "Due Course of Law".

4.   That the original Promissory note be returned to Petitioner in Court for inspection and review of signatures and verify the representations made therein.

5.   Petitioner seeks that the original Promissory Note be cancelled under election of remedies for Fraud in Fact and a declaration and the determination that Plaintiff JAY KIM is the rightful holder of title to the property.

6.   That Mortgage Defendants be ordered to pay damages to be determined by the Court or Jury for Fraudulent Inducement to the Contract(s)

7. That the Mortgage Defendants' accounting representative(s) demonstrate the specific form of payment used at the so-called funding of the loan.

8. That Defendants known and unknown at this time including Mortgage Defendants be declared to have no estate, right, title or interest in said property, and that JAY KIM is entitled to quiet and undisturbed possession of the property as described ante.

9. In the alternative Plaintiff seeks an award under election of remedies for compensatory damages in the amount of $189,312 plus interest, plus three times punitive damages for recoupment of the payments previously tendered to the Mortgage Defendants under usury.

10. For compensatory damages to be determined and apportioned amongst the various Defendants, for time spent in legal research and composition of this action comparable to standard Attorneys allowances, from each and every Defendant on all counts.

11. For Punitive Damages against all Defendants as applicable, as well as, compensatory and punitive damages under the Civil Racketeering Statutes in an amount to be determined at trial and sufficient to send a message that such practices are repugnant to the people of Clark County, State of Nevada.

12. That this Court rule that the practice of Fractional Reserve banking is Un-Lawful when used to secure usurious interest rates demandable in legal tender.

13. That this Court rule that it is a breach of contract to BAIT with an offer to contract for the loan of dollars and then SWITCH to loan Negotiable Instruments as a feigned

38

COMPLAINT FOR DAMAGES

fulfillment of that obligation.

14. For Punitive Damages in an amount sufficient to send a message that such practices are repugnant to the people of Clark County and the State of Nevada.

15. That this Court issue Declaratory Judgment that it is a proper interpretation of the doctrine of Equal Protection of the Laws that all who loan negotiable instruments or other instruments of credit in this state be compelled to accept negotiable instruments issued by the People of this state in satisfaction of these debts so contracted.

16. An order granting injunctive from any parties moving against the Plaintiff and/or his real estate, including the property in question, without first proving to this Court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met .

17. If any Defendant can uphold any valid claim upon Petitioner or Petitioner's property that it be fully discharged and the property returned by making proper claim under Federal Statute 46 USC 748 wherein the Secretary of the Treasury for the United States is authorized to pay claims and judgments and for the return of property under Federal Statute 50 App USC 7, 9 & 32 wherein the Attorney General for the United States is authorized to return property. These are the statutory remedies, as the peoples remedy, for claims and seizures under the fractional reserve fiat monetary system. and

18. For such other and further relief as the court may deem proper.

1   All Rights Reserved

2

3   JAY KIM

4   By: Jay-Semann: Kim, agent, Plaintiff/Petitioner: UCC 3-402(b)(1)

5

6

7   By:_____

8   Signature: Jay-Semann: Kim, Plaintiff/Petitioner, lawful man

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

## VERIFICATION

I, Jay-Semann: Kim  as Real Party in Interest and as Agent for JAY KIM Plaintiff,  and am authorized to execute this Verification in this capacity on behalf of JAY KIM.

I have read the foregoing Complaint for Damages and, in my capacity as Agent of JAY KIM, verify the contents thereof, and those allegations alleged on information and belief, I believe them to be true and correct.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct and that this declaration is executed on February 25, 2010 at Las Vegas, Nevada.

Jay-Semann: Kim, agent ,
Plaintiff UCC 3-402(b)(1)

41

COMPLAINT FOR DAMAGES

# Exhibit

20050601-0001794

Fee: $38.00
H/C Fee: $0.00

06/01/2005                09:48:06
T20050100265
Requestor:
  TICOR TITLE OF NEVADA INC

Frances Deane                ADF
Clark County Recorder    Pgs: 25

Assessor's Parcel Number:
178-24-117-045
Return To:
WELLS FARGO HOME MORTGAGE
3601 MINNESOTA DR. SUITE 200
BLOOMINGTON, MN 55435

Prepared By:
WELLS FARGO BANK, N.A.

5801 E. SLAUSON AVE., SUITE 210, CITY
OF COMMERCE, CA 900400000

Recording Requested By:
WELLS FARGO BANK, N.A.

5801 E. SLAUSON AVE., SUITE 210, CITY
OF COMMERCE, CA 900400000

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 18, 2005
together with all Riders to this document.
(B) "Borrower" is JAY KIM, A SINGLE PERSON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0054237144

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029  1/01

VMP®-6(NV) (0307)
Page 1 of 15          Initials:
NMFL #3029 (NVCD) Rev 10/12/2004
VMP Mortgage Solutions (800)521-7291

Lender's address is **P.O. BOX 10304, DES MOINES, IA   503060304**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **UNITED TITLE OF NEVADA**
**4100 W. FLAMINGO ROAD, #1000, LAS VEGAS, NV   89103**
(E) "Note" means the promissory note signed by Borrower and dated **MAY 18, 2005**
The Note states that Borrower owes Lender **ONE HUNDRED EIGHTY NINE THOUSAND THREE HUNDRED TWELVE AND 00/100**                                                                            Dollars
(U.S. $****189,312.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 01, 2035**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider              [X] Planned Unit Development Rider   [X] 1-4 Family Rider
[ ] VA Rider                   [ ] Biweekly Payment Rider     [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: ___

-6(NV) (0307)                         Page 2 of 15                         Form 3029  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                              of CLARK                                                   :

       [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

LOT ONE HUNDRED TWENTY ONE (121) IN BLOCK TWELVE (12) OF EAGLECREST TOWNHOMES AS SHOWN BY MAP THEREOF IN BOOK 115 OF PLATS, PAGE 79 OF THE COUNTY RECORDER, CLARK COUNTY NEVADA.


*SEE ADJUSTABLE RATE RIDER
THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.
TAX STATEMENTS SHOULD BE SENT TO:  WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA  503060304


Parcel ID Number: 178-24-117-045                    which currently has the address of
468 GREEN MACAW WAY                                                              [Street]
HENDERSON                                         [City], Nevada 89012            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

 -6(NV) (0307)                    Page 3 of 15          Initials: _____          Form 3029  1/01

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

A-10-610833-C

XXII

## CIVIL COVER SHEET

_____ County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

## I. Party Information

Plaintiff(s) (name/address/phone): JAY KIM
9010774 Reagan street
Los Alamitos, CA 90720
Attorney (name/address/phone):
Jay Kim, In Pro Per

Defendant(s) (name/address/phone):
Wells Fargo Home Mortgage
420 Montgomery St
San Francisco, CA
Attorney (name/address/phone):

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

| Real Property | Torts |
|---|---|
| | **Negligence** |
| ☐ **Landlord/Tenant** | ☐ Negligence – Auto |
| ☐ Unlawful Detainer | ☐ Negligence – Medical/Dental |
| ☒ **Title to Property** | ☐ Negligence – Premises Liability |
| ☒ Foreclosure | (Slip/Fall) |
| ☐ Liens | ☐ Negligence – Other |
| ☒ Quiet Title | |
| ☐ Specific Performance | |
| ☐ **Condemnation/Eminent Domain** | |
| ☐ **Other Real Property** | |
| ☐ Partition | |
| ☐ Planning/Zoning | |

**Torts** column (right):
☐ **Product Liability**
  ☐ Product Liability/Motor Vehicle
  ☐ Other Torts/Product Liability
☐ **Intentional Misconduct**
  ☐ Torts/Defamation (Libel/Slander)
  ☐ Interfere with Contract Rights
☐ **Employment Torts** (Wrongful termination)
☐ **Other Torts**
  ☐ Anti-trust
  ☐ Fraud/Misrepresentation
  ☐ Insurance
  ☐ Legal Tort
  ☐ Unfair Competition

| Probate | Other Civil Filing Types |
|---|---|
| ☐ **Summary Administration** | ☐ **Construction Defect** |
| ☐ **General Administration** | ☐ Chapter 40 |
| ☐ **Special Administration** | ☐ General |
| ☐ **Set Aside Estates** | ☐ **Breach of Contract** |
| ☐ **Trust/Conservatorships** | ☐ Building & Construction |
| ☐ Individual Trustee | ☐ Insurance Carrier |
| ☐ Corporate Trustee | ☐ Commercial Instrument |
| ☐ **Other Probate** | ☐ Other Contracts/Acct/Judgment |
| | ☐ Collection of Actions |
| | ☐ Employment Contract |
| | ☐ Guarantee |
| | ☐ Sale Contract |
| | ☐ Uniform Commercial Code |
| | ☐ **Civil Petition for Judicial Review** |
| | ☐ Other Administrative Law |
| | ☐ Department of Motor Vehicles |
| | ☐ Worker's Compensation Appeal |

Other Civil Filing Types (right column):
☐ **Appeal from Lower Court** (*also check applicable civil case box*)
  ☐ Transfer from Justice Court
  ☐ Justice Court Civil Appeal
☐ **Civil Writ**
  ☐ Other Special Proceeding
☐ **Other Civil Filing**
  ☐ Compromise of Minor's Claim
  ☐ Conversion of Property
  ☐ Damage to Property
  ☐ Employment Security
  ☐ Enforcement of Judgment
  ☐ Foreign Judgment – Civil
  ☐ Other Personal Property
  ☐ Recovery of Property
  ☐ Stockholder Suit
  ☐ Other Civil Matters

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only.*)

| | | |
|---|---|---|
| ☐ NRS Chapters 78-88 | ☐ Investments (NRS 104 Art. 8) | ☐ Enhanced Case Mgmt/Business |
| ☐ Commodities (NRS 90) | ☐ Deceptive Trade Practices (NRS 598) | ☐ Other Business Court Matters |
| ☐ Securities (NRS 90) | ☐ Trademarks (NRS 600A) | |

Feb 26, 2010
_____
Date

_____
Signature of initiating party or representative